**MCMANIMON, SCOTLAND & BAUMANN, LLC**
427 Riverview Plaza
Trenton, NJ 08611
(973) 323-8667
Andrea Dobin (adobin@msbnj.com)
Michael A. Siravo, IV (msiravo@msbnj.com)
*Attorneys for Plaintiff, Andrew Sklar, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: <br><br> COSTANTINO, John G., <br><br> Debtor. | Case No. 18-33011(ABA) <br><br> Chapter 7 <br><br> Honorable Andrew B. Altenburg, Jr., U.S.B.J. |
| ANDREW SKLAR, CHAPTER 7 TRUSTEE, <br><br> Plaintiff, <br> v. <br><br> NADINE GRASSI and BRIAN COSTANTINO, in his capacity as the Executor of the Estate of Joseph Spadoro[1], <br><br> Defendant. | Adv. Pro. No. 19-2292 |

**MEMORANDUM OF LAW IN SUPPORT OF ENTRY OF ORDER TO SHOW CAUSE**

Of Counsel and on the brief:

Andrea Dobin

---

[1] The Decedent was improperly named as Joseph Spadoro in the initial pleadings

1

**I.    PRELIMINARY STATEMENT**

At the time he filed his bankruptcy petition, John Costantino (the "Debtor") was entitled to an inheritance from the Estate of John Spadaro (the "Inheritance"). A dispute arose concerning the right of the Debtor's ex-wife, Nadine Grassi ("Grassi") to a portion of the Inheritance to pay past due child support and/or alimony. This dispute was complicated by a post-petition Order entered in the family court (obtained by Grassi without stay relief, notice to the Trustee or other authority) (the "April Order") declaring that the entirety of the Inheritance was to be paid to Grassi or her counsel. When the Trustee learned of the April Order, he notified the Executor of the Estate of John Spadaro (the "Executor") that the Order was invalid and asked that the Executor not disburse the disputed funds pending a resolution. That request was honored…..for eight months…..until, without notice, the Executor violated the agreement and disbursed the entirety of the Inheritance.

Meanwhile, as foreshadowed by the Trustee's letter to the Executor six months earlier, since the dispute could not be resolved and was a purely legal question, the Trustee initiated this Adversary Proceeding seeking declaratory judgment as to the extent of Grassi's lien on the Inheritance and the validity of the April Order. At that point both the Executor and Grassi changed counsel. Grassi quickly conceded that the provisions of the April Order had some significant issues as to its enforceability and that her lien on the Inheritance was limited to unpaid child support (not alimony). Negotiations were undertaken; settlement agreements were circulated in draft; no party answered the Complaint. Then, suddenly, without warning, the Executor notified the Trustee and Grassi that the entirety of the Inheritance (less $2,000) had been disbursed under the guise of compliance with the April Order. The Executor is now seeking to intervene in the

2

matrimonial court to obtain an Order ratifying his actions which were in violation of the automatic stay, among other things. He must be stopped and his actions must be sanctioned.

## II. THE TRUSTEE IS ENTITLED TO ENTRY OF AN ORDER TO SHOW CAUSE.

In determining whether injunctive relief is appropriate, a court examines the following four factors: (i) whether the movant shows a reasonable likelihood of success on the merits; (ii) whether the movant will be irreparably harmed by denial of the injunctive relief sought; (iii) whether the injury to the movant in the absence of injunctive relief outweighs the possible harm to the non-movant if the injunction is granted; and (iv) the impact of a preliminary injunction on the public interest. *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 777 (D.N.J. 2013). The Third Circuit has recognized that "an injunction shall issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *Id.* at 777-78 (quoting *Conestoga Wood Specialities Corp. v. Sec. of U.S. Health & Human Servs.*, 2013 WL 1277419 at *1 (3d Cir. Feb. 7, 2013)). The Trustee is entitled to injunctive relief in connection with the Third Count of the complaint seeking an injunction against MTAG.

Here, the Trustee is confident that he will prevail on the merits of the complaint against the Executor and Grassi and, thus, asks the Court to utilize its equitable powers under 11 U.S.C. § 105 to address the unconscionable acts undertaken by the Executor in clear violation of the Bankruptcy Code and well-settled prevailing law. If the Executor is not prevented from obtaining a ratifying Order from the matrimonial Court, inconsistent rulings and extraordinary complications will certainly result. This Court must act to protect the interests of the Bankruptcy Estate.

3

### A. The Trustee has reasonable likelihood of success on the merits of his complaint.

The Complaint initiating this matter sought a declaratory judgment that Grassi's lien on the Inheritance was limited to the unpaid child support (the "Child Support") due to her for the benefit of her children. She was not entitled to a lien for her unpaid marital support (the "Alimony"). Her counsel has now conceded this point, based upon statutory construction. For the benefit of the Court, the statutory analysis is summarized thus:

- *N.J.S.A.* 2A:17-56.23b provides a lien on an inheritance for child support only. The statute itself does not mention spousal support.
- The *N.J.S.A.* defines "spousal support" and "child support" separately. They are clearly two different things. Had the legislature wanted to provide a lien for spousal support, it would have done so.
    - *See, Lewis v. Harris*, 378 N.J. Super. 168, 207 (App. Div. 2005) (listing "rehabilitative alimony" and "child support guidelines" as separate considerations that judges routinely consider in divorce cases); *Cox v. Cox*, 335 N.J. Super. 465, 474-76 (App. Div. 2000) (outlining the four different types of alimony in New Jersey and generally identifying the economic support *of the spouse or former spouse, i.e.*, not necessarily that person in their capacity as a parent, as the purpose of each of them)
    - The language is not ambiguous, which, according to statutory interpretation maxims, dictates that we rely on the plain meaning thereof. The definition of "child support" includes the following, relevant language: "for the…support and maintenance of a child and **parent** with whom the child is living". *N.J.S.A.* 2A:17-56.52 (emphasis added). That is not spousal support.
    - Therefore may be a lien on the Inheritance for *child support*, but not for *spousal support*.

In sum, the Trustee has <u>already</u> won the cause of action for declaratory judgment in the Complaint. The Executor <u>knew</u> that since he undertook the task of drafting the Stipulation of Settlement which included the relevant provisions demonstrating that only the Child Support would be satisfied from the Inheritance. By releasing the Inheritance without notice to the Trustee or Grassi, the Executor has become "judge and jury" making it impossible to obtain a timely and orderly conclusion of this Adversary proceeding.

4

The issues that remain open are (i) the sanctions to be imposed on Grassi for her willful stay violation (that was proposed to be waived in the settlement that is now impossible); and (ii) the sanctions that need to be imposed for the Executor's latest conduct, i.e., releasing the Inheritance. The balance of this Memorandum will address the request for relief against the Executor for having released the Inheritance.

**B.   The Executor had no justification for releasing the Inheritance in violation of the automatic stay.**

The email that conveyed copies of the Motion for Intervention to the Trustee stated as follows:

> In light of the docketed child support judgment and the clear legal requirements imposed upon the Estate by N.J.S.A. 2A:17-56.23b, we have determined that a settlement agreement as previously discussed is not possible. The Estate has filed the attached motion today and you a hard copy of all documents will be sent to you by mail. Thank you.

This email (and the argument contained in the Motion to Intervene that expounds on this theory) is filled with fallacies and will provide this Court with a roadmap to the basis on which to sanction the Executor.

1. **The Executor willfully violated the automatic stay.**

The Inheritance was disclosed by the Debtor on his bankruptcy petition; It is property of the Bankruptcy Estate; the Trustee has been seeking to recover it; the Executor's counsel received a <u>letter from the Trustee</u> explaining his claim to the Inheritance. It cannot be reasonably disputed that the Inheritance is property of the Estate. The Inheritance may be subject to a *lien* in favor of Grassi, but the Inheritance is not property of Grassi or the Executor. Nor can it be disputed that the Executor <u>knew</u> about the bankruptcy. As such, the Executor is bound by the automatic stay and any violation of the automatic stay is deemed willful for which sanctions must be imposed.

5

The Executor exercised dominion and control of the Inheritance, inconsistent with the Trustee's directive as laid out in the letter sent in June, 2019. See, Exhibit C to the Certification of Andrea Dobin submitted herewith (the "Dobin Cert"). This is a violation of the automatic stay.

"Once the creditor becomes aware of the filing of the bankruptcy petition <u>and therefore the automatic stay</u>, any intentional act that results in a violation [of] the stay is 'willful.' No specific intent to violate the stay or malice is required." COLLIERS ON BANKRUPTCY, 16th Ed. ¶ 362.12[3] (emphasis added) (citing *In re Johnson*, 501 F.3d 1163 (10th Cir. 2007); *Brown v. Chestnut (In re Chestnut)*, 422 F.3d 298 (5th Cir. 2005); *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265 (1st Cir. 1999); *In re Landsdale Family Restaurants, Inc.*, 977 F.2d 826, 829 (3d Cir. 1992) (act done intentionally with knowledge that bankruptcy petition has been filed is willful violation of stay).

A violation of the stay is punishable as contempt of court. COLLIERS ON BANKRUPTCY, 16th Ed. ¶ 362.12[2] (citing *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539 (11th Cir. 1996); *Mountain Am. Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444 (10th Cir. 1990) (stay violations may be punishable under this subsection, if applicable, or as contempt under 11 U.S.C. § 105)). "Most courts will impose contempt sanctions for a knowing and willful violation of a court order, and the automatic stay is considered as equivalent to a court order." COLLIERS ON BANKRUPTCY, 16th Ed. ¶ 362.12[2] (internal citations omitted). Section 362(k)(1) provides for a recovery of damages, costs, and attorneys' fees by an individual damaged by a willful violation of the stay. 11 U.S.C. § 362(k)(1). In some cases, such individual may even recover punitive damages. *Id*. Courts have held that Trustees may be entitled to punitive damages under this provision. *See In re Atl. Bus. Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990); *In re Garofalo's Finer Foods*, 186 B.R. 414, 439 (N.D.Ill. 1995)(Trustee is an 'individual' for the purposes of the punitive damages provision). In light of the egregious nature of the Executor's conduct in this matter, lulling the Trustee into

6

believing he was safeguarding the Inheritance pending resolution of this Adversary Proceeding and then disbursing same without notice to anyone, punitive damages is appropriate.

### 2. Contrary to his counsel's statement, there is no "docketed child support judgment" in the amount the Executor disbursed.

The language used in the email sent by the Executor's counsel and in the Motion to Intervene suggests that he believes that there is a "judgment" in the amount of $58,972.07.[2] That is intellectually dishonest and wholly misleading. In support of this contention, he provides a "Civil Action Certification of Arrears" signed by an "Investigator". See page 17 of 17 for the Gilbert Certification attached as Exhibit G to the Dobin Cert. This document directly contradicts the manner in which counsel portrays it. First of all, even lay people know that <u>judgments</u> are signed by <u>judges</u>, not "investigators". What he received was a statement of support arrears, including both Child Support and Alimony. It is improper to call it something else. Furthermore, the document itself references a judgment, but that judgment is from 2016 and only sets forth the amount of weekly payment, i.e., $840.89 per week. This judgment is not being "satisfied" by any payment. It is an ongoing obligation imposed on the Debtor that is continuing to accrue based upon the outcome of his divorce, even after the Inheritance is paid over.

Counsel further certifies that there is no way to distinguish between Child Support and Alimony arrears. This, too, is an intentional misstatement. Apparently, counsel forgot about the email sent by the Executor's prior counsel sent a mere seven days earlier which did just that. See Exhibit E to the Dobin Cert. To be clear, of the $58,972.07 that the Executor believed was due,

---

[2] The Preliminary Statement in the brief in support of the Motion to Intervene states

> "The Camden County Probation Department (the "Probation Department") has advised the Estate that John Costantino has a child support judgment docketed against him with the Clerk of the Superior Court of New Jersey in the amount of $58,972.07, said amount as of February 18, 2020."

7

only $15,212.06 was actually due for Child Support. Grassi conceded that she is not entitled to all of the Inheritance. The Executor's counsel (whose public profile professes no expertise in either family or bankruptcy law) has, at a minimum, made a grievous error of law.[3]

To be clear, the document that the Executor points to is not a "docketed judgment" of any sort, nor is it for "child support" as it clearly includes Alimony. Counsel's statement is misleading.

### 3.  N.J.S.A. 2A:17-56.23b does not mandate the distribution by the Executor at any particular time.

The Trustee has provided an outline of the statutory construction syllogism that leads to the inescapable conclusion that only Child Support, not Alimony, are liens on the Inheritance. Putting aside the fact that the Executor is reading the statute wrong and relying on non-lawyer state employees to do so (even in the face of an agreement between the trustee and Grassi providing otherwise), the question remains … why? The Executor has not provided a shred of information as to why it was necessary to disburse the Inheritance at all….to anyone, let alone in violation of the automatic stay and a pre-existing agreement. Pure conjecture will lead to the following conclusion: the <u>Debtor</u> wanted these funds used to pay his Alimony now. Upon information and belief, the Debtor and the Executor are, at the very least, friends; they have the same last name. It is possible that the Debtor needed this money paid to avoid problems in his ongoing conflict with Grassi. That is the only explanation, but it cannot provide a defense to the relief being sought by the Trustee.

---

[3] Counsel has cited to the case of *Simpkins v. Saiani*, 356 N.J. Super. 26 (App. Div. 2002) as if this case has some relevance to the issue *sub judice*. It does not. The Appellate Division clearly states that its opinion in that case is "to interpret the meaning of the term 'net proceeds' in N.J.S.A. 2A:17-56.23b." It provides no direct guidance on whether the statute applies to Alimony as well as Child Support, but does provide insight into the manner in which the Appellate Division undertakes statutory construction analysis which supports the Trustee's position on the interpretation of N.J.S.A. 2A:17-56.23b.

### 4. The Executor is Impermissibly Forum-Shopping.

The Trustee "called the question" of the extent of the lien that Grassi had on the Inheritance by filing this Adversary Proceeding. The Executor simply needed to await the resolution of same before disbursing the Inheritance. Instead, he disbursed the Inheritance and is now seeking approval of his actions from the family court. The extent of liens is a core matter to be decided by the bankruptcy court pursuant to 28 U.S.C. § 157(b)(2)(K). While state courts are given concurrent jurisdiction over some discrete issues with respect to domestic support obligations[4], the Trustee is not aware of any case law providing that state courts are given concurrent jurisdiction to determine the validity, extent, or priority of a *lien*, even if such lien arises from a child support and/or domestic support obligation. Particularly troubling is the fact that this family court had no hesitation to enter the April Order in <u>direct</u> violation of the automatic stay. It is clear that the family court presiding over the Costantino/Grassi matter has not properly considered the role of the Trustee or the Debtor's pending bankruptcy in its decision-making. This Court must take immediate action to protect the interests of the Bankruptcy Estate.

### C. RELIEF REQUESTED

The Trustee asks that the Court enter an Order to Show Cause against the Executor providing that he show cause why an Order should not be entered (i) declaring the April Order void *ab initio*; (ii) requiring him to withdraw the Motion to Intervene in the Family Court; (iii) directing him to recover the Inheritance from the party to whom it was transferred and delivering same to the Trustee to be held pending further order of the Court; and (iv) imposing sanctions, including possible punitive sanctions, for a willful violation of the automatic stay.

---

[4] *See, e.g.*, *In re Baker*, 195 B.R. 883 (Bankr. S.D. Ohio 1996) (providing that state courts have concurrent jurisdiction as to determinations of dischargeability of alimony and child support); *In re Mann*, 88 B.R. 427, 430 (Bankr. S.D. Fla. 1988) (providing that state court has concurrent jurisdiction over applicability of stay to contempt proceedings arising out of alimony and child support award).

9

### III. CONCLUSION

"No good deed goes unpunished."

The Trustee agreed to let the Executor retain the Inheritance so as to avoid placing him in the difficult position of having to choose between honoring a Trustee's turnover demand and the April 24 Order <u>and</u> to avoid the Estate incurring administrative expenses associated with an unnecessary fight. Then, once this Adversary Proceeding was initiated, the Trustee agreed to let the parties work out the problems with the April 24 Order as part of a global settlement and did not insist on the parties' answering the complaint or proceeding with pretrial matters. Everyone appeared to be working toward a consensual resolution until the Executor, basically in the middle of the night[5], changed his mind without notice or justification. This isn't just bad form or lack of professional courtesy, it's a stay violation. The Estate is now suffering because the Executor violated the Bankruptcy Code. He must fix it and pay the costs borne by the Estate for his hasty, irrational and prohibited actions.

                                        Respectfully,

                                        McManimon Scotland & Baumann, LLC,
                                        counsel to Andrew Sklar, Trustee

Dated: March 2, 2020                      By: /s/ Andrea Dobin
                                                Andrea Dobin

---

[5] The sheer number of papers filed in connection with the Motion to Intervene suggests that the decision to file it was made <u>many days</u> prior to giving notice to the Trustee and/or Grassi.