**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**MITCHELL H. COHEN U.S. COURTHOUSE**
401 Market Street
P.O. BOX 2067
CAMDEN, NJ 08101-2067

**Andrew B. Altenburg, Jr.** (856) 361-2320
**U.S. BANKRUPTCY JUDGE**

June 9, 2020

| Andrea Dobin, Esq. | Nadine Grassi | Gilbert Brooks, Esq. |
|---|---|---|
| McManimon Scotland & Baumann, LLC | 263 Kings Highway West Haddonfield, NJ 08033 | Duane Morris LLP 1940 Route 70 East Suite 100 |
| 427 Riverview Plaza Trenton, NJ 08611 | | Cherry Hill, NJ 08003 |

    RE:    **Sklar v. Grassi**
              **Adv. Proc. No. 19-2292-ABA**

Dear Ms. Grassi and Counsel,

After a hearing held March 10, 2020 in this proceeding on the *Order to Show Cause re: Injunctive Relief and Sanction for Willful Stay Violation* filed by the Chapter 7 Trustee Andrew Sklar ("Trustee"), Doc. No. 4, the court asked the parties to brief what effect an order, dated July 13, 2018 and entered prepetition in the Superior Court of New Jersey, Chancery Division/Family Part (the "July 2018 Order") Doc. No. 12-1, had on an inheritance otherwise due to the debtor, John Costantino ("Debtor or Plaintiff"). The executor of the probate estate, Brian Costantino (the "Executor"),[1] declined to file a brief; Nadine Grassi, the debtor's ex-wife ("Grassi or Defendant"), who claims the funds for unpaid child and spousal support, filed a certification *pro se* that relied on her former counsel's prior arguments; and the Trustee filed a brief arguing that the funds are property of the bankruptcy estate. The Debtor has taken no position in this matter. Having considered the arguments and submissions of the parties, this matter is now ripe for disposition.

For purposes of this letter opinion, the following constitutes this court's findings of relevant facts and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

---

[1] Mr. Costantino is acknowledged by the parties as "executor," Doc. Nos. 1 and 10-3, ¶ 2, and by the Superior Court as "administrator," Doc. No. 12-1, ¶5. For purposes of this opinion, the court prefers to use the term "executor" because an administrator and an executor serve the same role. *See* N.J.S.A. 3B:1-1 (defining "administrator" as one who administers an intestate or testate estate); *Black's Law Dictionary* (11 ed. 2019, ed. Garner) (defining executor as one who is named by the testator to carry out the provisions of the will); *Ogden v. Blackledge*, 6 U.S. 272, 275 (1804) ("Indeed, the term *administrators* comprehends executors, for every executor is an administrator; they both plead *plene administravit,* and the only difference between them is, that one is created by the act of law, and the other by the act of the party.").

Paragraph 5 of the July 2018 Order provided:

> 5. Defendant's request for the administrator of the estate to hold all of Plaintiff's disbursements in escrow and release them to Defendant for the monies owed is GRANTED. By consent of the parties, Bryan Costantino shall be precluded from making any distribution from the estate of Joseph Spadaro to Plaintiff, or at the direction of the Plaintiff, or for the Plaintiff's benefit other than for payment of child support and spousal support arrears.

Doc. No. 12-1.

Paragraph 4 of the July 2018 Order also directed the Debtor to submit to the court and all parties all documents pertaining to the inheritance, including all probate documents and the disbursement schedule of the anticipated inheritance.

Thereafter, on November 21, 2018 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Debtor disclosed that he was a beneficiary of the Estate of Joseph Spadaro for an approximate amount of $50,000 (the "Inheritance") and the Inheritance was not claimed as fully exempt by the Debtor. Grassi has always asserted an entitlement to a portion of the Inheritance for unpaid court-awarded support due from the Debtor, both for herself and for her children.[2] Doc. No. 4-1.

Then, without leave of the Bankruptcy Court or notice to the Trustee, Ms. Grassi filed a motion in the Superior Court seeking relief pertaining to distribution of the Inheritance. An order entered by the Superior Court (the "April 2019 Order"), restrained the Executor from releasing any funds from the Inheritance to the Debtor. Doc. No. 4-2, ex. A. It further ordered the Executor to release the funds to Ms. Grassi's attorney except for an amount to the Probation Department. Grassi's attorney in turn could release the remaining funds to Ms. Grassi "in further satisfaction of Plaintiff's outstanding obligations to Ms. Grassi," namely, unpaid spousal support. *Id*. Thus, it is clear that even postpetition, the Executor had not yet distributed the inheritance.

Sometime between February 18, 2020 and March 2, 2020, instead of releasing some funds to Ms. Grassi's attorney for outstanding and future marital support and an amount to the Probate Department to satisfy outstanding child support liens, the Executor disbursed all of the Inheritance to the Probate Department. Doc. No. 4-8, ex. G, p. 12.

The Trustee contends that the July 2018 Order did not extinguish the Debtor's right to the Inheritance. Doc. No. 26, p. 5. He argues that Ms. Grassi's request that resulted in the April 2019 Order supports this conclusion as the request "would have been unnecessary if anyone believed that the Inheritance was already outside of the control of the Debtor and/or Executor as a matter of law or fact." *Id*. He argues that "By its terms, at most the July 2018 Order acted as a restraint on distribution of the Inheritance to anyone other than Grassi and it expanded her right to payment to spousal support in addition to child support." *Id*., p. 4.

The trustee concludes that "when the Executor—knowing of the Trustee's claim to the Inheritance—disbursed these funds to the Probation Division without the knowledge or consent of the Trustee or this Court, he engaged in a willful violation of the automatic stay. As a result, he

---

[2] It is the court's understanding that the amount of the Inheritance is less than the total amount of support owed to Grassi and her children.

must be sanctioned for this conduct and must reimburse the Estate for the costs incurred as a result thereof." *Id*., p. 3.

In making his arguments, the Trustee appears to consider only whether the Inheritance was funds of the Debtor or funds of Grassi. But the court finds instead that the funds, in reality, belonged to a third entity: the probate estate.

New Jersey law provides:

> Upon the death of an individual, his real and personal property devolves to the persons to whom it is devised by his will or to those indicated as substitutes for them in cases involving lapse, renunciation, or other circumstances affecting the devolution of testate estates, or in the absence of testamentary disposition, to his heirs, or to those indicated as substitutes for them in cases involving renunciation or other circumstances affecting devolution of intestate estates, subject to rights of creditors and to administration.

N.J.S.A. 3B:1-3. Here, the Executor had not completed administration of the probate estate at the time that the Debtor filed his bankruptcy petition. We know that because the Superior Court entered an order postpetition attempting to affect the Inheritance. Though the Debtor obtained an interest in the probate estate upon the death of his uncle, the assets were held by the probate estate until creditors and administrative expenses would be paid. *In re Byrne*, 541 B.R. 254, 257 (Bankr. D.N.J. 2015) (stating regarding assets of the decedent without beneficiary designations that "the Debtor, at best, has a contingent interest in the form of a potential inheritance of any remaining proceeds in the Decedent's estate after satisfaction of Decedent's creditors and administration in the probate court."). *See Homestead at Mansfield Homeowners Ass'n v. Estate of Mount*, A-0836-13T1, 2014 WL 3055898, at *3 (N.J. Super. Ct. App. Div. July 8, 2014) (explaining that "devolve" in N.J.S.A. 3B:1-3 means that the beneficiary takes title subject to creditors and administration of the estate).

To the extent that Ms. Grassi held a judgment for child support arrears against the Debtor, she became one of the probate estate's creditors. N.J.S.A. 2A:17-56.23b imposes a lien on the Inheritance to the extent of unpaid child support arrears. "The lien shall stay the distribution of the net proceeds to the prevailing party or beneficiary until the child support judgment is satisfied." N.J.S.A. 2A:17-56.23b. Indeed, executors and administrators of probate estates must initiate a judgment search to determine whether an inheritance is subject to this lien. N.J.S.A. 2A:17-56.23b(b)(2). Thus, the Debtor's expectancy interest in the Inheritance was subject to and therefore diminished by this statutory lien in the amount of the child support judgment.

As to the rest of the Debtor's expected Inheritance, the Superior Court's July 18 Order replaced Ms. Grassi for the Debtor as heir of the probate estate for the remainder of the Inheritance to pay alimony arrears and future support. At that point, the Debtor and/or the bankruptcy estate no longer had any interest in the Inheritance. But Ms. Grassi only gained the interest the Debtor had, the expectancy interest, waiting for the Executor to distribute the funds of the probate estate. *See United States v. Mingucci*, CIV.A. 10-2522 ES, 2013 WL 6858822, at *6 (D.N.J. Dec. 30, 2013) ("Until the estate of Dorothy Mingucci has been fully administered and is closed, the Beach House remains property of the [probate] estate and under the jurisdiction of the state probate court alone. . . . While this Court has the authority to 'decree petitioner's right in the property to be distributed after [the estate's] administration,' it may not "disturb or affect the possession of

property in the custody of a state court.") (citing *Markham*); *Brayton v. Stoughton*, 335 Mass. 321, 325 (1957) (distinguishing between vested interest in inheritance and right to receive specific property or sum of money); *In re Blau's Estate*, 4 N.J. Super. 343, 350 (App. Div. 1949) (holding that until the distributees and the distributive shares of an estate have been determined by the state probate court, the Alien Property Custodian could not vest in himself specific interests in the estate). *See also In re Garcia*, 507 B.R. 32, 43 (B.A.P. 1st Cir. 2014) ("At most, the Debtors owned a right to distribution of a fraction of the hereditary estate; until the funds are distributed, the Debtors and their bankruptcy estate have no property interest in the funds themselves. Therefore, the funds in question are not property of the bankruptcy estate . . ."); *In re Ortega*, 14-06449 BKT, 2014 WL 5488326, at *3 (Bankr. D.P.R. Oct. 29, 2014), *aff'd sub nom. Ortega*, BAP PR 14-067, 2015 WL 8270775 (B.A.P. 1st Cir. Dec. 4, 2015) (following *Garcia* in holding that property that had not been distributed from probate estate had not become property of the bankruptcy estate, and accordingly denying stay relief to entity with lien on the property);

Considered another way, the July 2018 Order directed the Executor not to distribute any of the Inheritance to the Debtor, but to hold the funds in escrow and release them only to Ms. Grassi. In New Jersey, the deposit of property into escrow "'creates in the grantee such an equitable interest in property that upon full performance of the conditions according to the escrow agreement, title will vest at once in him.'" *In re Arrow Mill Dev. Corp.*, 185 B.R. 190, 194 (Bankr. D.N.J. 1995) (quoting 28 Am. Jur. 2d Escrow § 10 (1964)). However, "'pending full performance of the conditions, the legal title remains in the grantor. . . .'" *Id.* "[T]ransfer of title from the grantor to the grantee does not occur until the happening of the condition or contingency specified by the escrow agreement." *Id.*, at 194 (citing New Jersey State Ordinary v. Thatcher, 41 N.J.L. 403 (N.J. Sup. Ct. 1879)).

Reading the July 2018 and April 2019 orders together, as well as the pleadings leading to each, the logical conclusion is that the Superior Court meant for the Executor to hold the Debtor's expected Inheritance in escrow until such time as he could make distribution. As the condition or contingency specified by the escrow agreement – the probate estate being ready for distribution – had not occurred yet, the funds remained property of the probate estate. The April 2019 Order supports that at the time of the Petition Date, the Inheritance was still being held by the Executor. Thus, the condition precedent to the funds vesting in Ms. Grassi had not yet occurred. And consequently, as of the Petition Date, the Inheritance was not property of the Debtor's estate. *See Garcia*, 507 B.R. at 43.

These conclusions raise a jurisdictional issue. The probate exception to bankruptcy jurisdiction holds that a Bankruptcy Court may not dispose of the property of a probate estate. *Collier on Bankruptcy*, ¶ 3.01[3][b] (Matthew Bender 16th ed. 2020) ("Jurisdictional concerns reserve to state probate courts 'the probate or annulment of a will and the administration of a decedent's estate … [and] precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.'") (quoting *Marshall v. Marshall*, 547 U.S. 293, 297 (2006)).

Both bankruptcy and probate create a *res* over which the applicable courts have *in rem* jurisdiction. The probate exception applies to prevent federal courts from exercising jurisdiction over a *res* already existing under a state court's jurisdiction. As explained by the Supreme Court in *Marshall v. Marshall*, 547 U.S. 293 (2006):

> In short, we comprehend the "interference" language in Markham as essentially a reiteration of the general principle that, when one court is exercising in rem

> jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res. *See, e.g., Penn General Casualty Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195-196, 55 S. Ct. 386, 79 L. Ed. 850 (1935); *Waterman*, 215 U.S., at 45-46, 30 S. Ct. 10, 54 L. Ed. 80. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.*, at 311-12.

In short, while a federal court can adjudicate rights over the *res*, it cannot compel payment from that *res*. *Marshall v. Marshall*, 547 U.S. 293, 310 (2006):

> "[W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, . . . it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court."

*Id.*, at 310 (quoting *Markham v. Cabell*, 326 U.S. 490, 494 (1945)). *See Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 227, 229 (3d Cir. 2008) (federal court assuming in rem jurisdiction over property that is in the custody of the probate court violates the probate exception; "But at a minimum, following Marshall, an action 'to dispose of property that is in the custody of a state probate court' involves the assumption of in rem jurisdiction over that property."). The Third Circuit Court of Appeals elaborated:

> In an effort to clarify prior case law, we note the distinction between an in personam action seeking a judgment that a party has the right to a distributive share of an estate, but stopping short of determining a party's interest in specific estate property, and an in rem action such as Three Keys', which seeks a determination of a party's interest in specific property in the custody of the probate court. The distinction mirrors the traditional understanding of a judgment in personam, which is "of such character that by means of it the plaintiff can, as a means of attaining the principal object of the action, subject the general assets of defendant, as distinguished from some specific property interest, to the payment of his claim." *Cook*, 15 COLUM. L.REV. at 120.

*Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 230 (3d Cir. 2008).

Accordingly, this court could only determine whether Grassi or the bankruptcy estate was entitled to the debtor's distributive share but could not direct its payment from the Executor. *Kennedy-Jarvis v. Wells*, 113 F. Supp. 3d 144, 152 n. 2 (D.D.C. 2015) (stating in discussion of *Three Keys*, that probate exception precluded jurisdiction over claim styled as an *in personam* claim where the plaintiff sought not only "the distribution of probate property," but also a determination that its interest in specific shares and dividends was "superior to the interests of the Estate"). *See also In re Garcia*, 507 B.R. 32, 45 (B.A.P. 1st Cir. 2014) ("Therefore, to the extent that the trustee's complaint demanded that the bankruptcy court order the CFI to distribute proceeds

on a basis other than § 542(a) of the Bankruptcy Code, the complaint fell within the probate exception, and the bankruptcy court erred in adjudicating it."); and *In re Burke*, 592 B.R. 834, 842 (Bankr. E.D. Tenn. 2018) (holding that plaintiff's request that bankruptcy court prohibit administrator of probate estate from transferring any further funds to any of the defendants fell "squarely" within the probate exception). *Compare United States v. Tyler*, 528 Fed. Appx. 193, 197 (3d Cir. 2013) (holding that District Court judgment that held liable co-executors of a trust for their failure to satisfy a federal tax lien on the estate's property did not remove any property from the probate court's control and therefore did not violate the probate exception

To the extent that Executor relinquished funds in excess of the child support arrears to the Probate Department, and without the Superior Court's permission, those funds arguably are still property of the probate estate. The bankruptcy trustee now holds those funds by consent of the parties in trust for Grassi. Yet this court does not have jurisdiction to order the Trustee to pay them to her. *See Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 229 (3d Cir. 2008) ("Because the SR Utility shares in question are still property under the jurisdiction of the Orphans' Court, it follows that we cannot assume in rem jurisdiction over that same property."). "Subject matter jurisdiction "cannot be conferred by consent" of the parties." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004) (quoting *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 854 (3d Cir. 1996)). *See Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 225 (3d Cir. 2008) ("We must assess our jurisdiction regardless of whether a district court correctly disposed of a case on the merits, and regardless of whether the issue was raised by the parties on appeal.").

Technically, the funds should be returned to the Executor for proper distribution in accordance with the orders of the Superior Court and probate requirements. Should any party need an order directing the appropriate distribution, they must obtain that order in the Superior Court.

Also, given the above decision, neither Grassi nor the Executor violated the automatic stay. As a result of the July 18 Order, the Inheritance remained property of the probate estate for the benefit of Grassi. Because the Inheritance was not property of the estate, there could be, nor can there be no stay violation when the Executor distributed/distributes the Inheritance. *See In re Marrero*, 17-06915, 2018 WL 5281626, at *3 (Bankr. D.P.R. Oct. 22, 2018) (finding that lease expired prepetition and therefore was not property of the estate and no stay violation could have occurred); *In re Gunn*, 13-2271-JCO, 2017 WL 3172750, at *4 (Bankr. S.D. Ala. July 25, 2017) ("Because the Property was not property of the estate when Equity Ventures purchased the Property from the State on August 8, 2014, the stay did not apply to the Property and thus, there was no violation.); *In re Log, LLC*, 10-80378, 2010 WL 4774347, at *5 (Bankr. M.D.N.C. Nov. 9, 2010) (no stay violation where property owned by guarantors of debtor's debt not property of the estate); *In re Debolt*, 177 B.R. 31, 38 (Bankr. W.D. Pa. 1994) (ex-wife's interest in debtor's pension became her sole property prepetition, thus was not property of the estate subject to the automatic stay). Accordingly, the Trustee is not entitled to the relief he seeks and his demand in his Order To Show Cause must be denied.[3]

An appropriate judgment has been entered consistent with this decision and is enclosed.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Encl

---

[3] Likewise, the Complaint in this matter should be withdrawn and/or dismissed - but since no party has properly sought dismissal of the Complaint, the court will afford the parties the opportunity to address the matter (perhaps through a consensual voluntary dismissal).